**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WELKER BEARING COMPANY,

      Plaintiff,                                    Case No. 06-13345
                                               Hon. Gerald E. Rosen

v.

PHD, INC.,

      Defendant.
_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 24, 2009

PRESENT:  Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I.  INTRODUCTION

Following the entry of judgment in its favor in this patent infringement case,

Defendant PHD, Inc. seeks a declaration under 35 U.S.C. § 285 that this case is

"exceptional," such that an award of over $600,000 in attorney fees is warranted.  Not

surprisingly, Plaintiff Welker Bearing Company opposes this request, arguing that

Defendant has not met the stringent standards for such an award.  As explained below, the

Court finds that this case is not "exceptional" within the meaning of § 285, and that an

award of attorney fees therefore would not be appropriate. [1]

## II. ANALYSIS

### A.    The Standards Governing Defendant's Request for Attorney Fees

Defendant's request for an attorney fee award is governed by 35 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  There is no dispute that Defendant qualifies as a "prevailing party" here, as the Court awarded summary judgment in its favor on Plaintiff's claims of patent infringement.  Accordingly, the disposition of Defendant's motion turns upon whether this is an "exceptional case[]" within the meaning of § 285.

The Federal Circuit has "recognized that § 285 is an exception to the American Rule and a change to the pre-1946 practice of not awarding attorney fees based upon equitable considerations in patent cases."  *Forest Laboratories, Inc. v. Abbott Laboratories,* 339 F.3d 1324, 1329 (Fed. Cir. 2003).  "In the context of fee awards to prevailing accused infringers, we have observed that § 285 is limited to circumstances in which it is necessary to prevent a gross injustice to the accused infringer, and have upheld findings of exceptionality to prevent such an injustice only when the patentee has procured its patent in bad faith (*i.e.,* committed inequitable conduct before the Patent

---

[1]Apart from its request for attorney fees, Defendant also seeks to recover its costs as a "prevailing party" pursuant to Fed. R. Civ. P. 54(d)(1) and Local Rule 54.1 of this District, and it has provided a bill of costs as an exhibit to its motion.  Plaintiff does not oppose this aspect of Defendant's motion, nor does it dispute that Defendant is a "prevailing party" within the meaning of Rule 54(d)(1).  Accordingly, Defendant may recover its costs in accordance with Rule 54(d)(1) and Local Rule 54.1.

2

Office) or has litigated its claim of infringement in bad faith." *Forest Laboratories,* 339 F.3d at 1329 (internal quotation marks and citations omitted). "Absent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless." *Serio-US Industries, Inc. v. Plastic Recovery Technologies Corp.,* 459 F.3d 1311, 1322 (Fed. Cir. 2006). As the moving party, Defendant must show "by clear and convincing evidence" that this case is "exceptional" within the meaning of § 285. *Forest Laboratories,* 339 F.3d at 1327.

**B.    Defendant Has Not Shown by Clear and Convincing Evidence That Plaintiff Brought This Case in Subjective Bad Faith.**

Defendant does not contend that Plaintiff committed misconduct in securing the two patents-in-suit or in the course of this litigation. Accordingly, to establish that this case is "exceptional" and that an award of attorney fees is appropriate, Defendant must prove by clear and convincing evidence that this litigation was brought in subjective bad faith, and that Plaintiff's claims in this case were objectively baseless. *See Serio-US Industries,* 459 F.3d at 1322. The Court agrees with Plaintiff that neither showing has been made here.

In this case, Plaintiff alleged that two of Defendant's products — referred to by the parties as "Clamp I" and "Clamp II" — infringed two of Plaintiff's patents, the '478 patent and the '254 patent. In its opinion awarding summary judgment in Defendant's favor on these claims of patent infringement, the Court held (i) that there was no evidence

that Defendant's "Clamp I" was used, sold, or offered for sale after September 7, 2004,

the date that the first of the two patents-in-suit was issued, and (ii) that Defendant's

"Clamp II" did not infringe the two patents-in-suit because it lacked the rotating central

post that was included as a limitation in both patents, at least as construed by the Court.

In arguing that these infringement claims were brought in bad faith, Defendant

contends that Plaintiff's pre-suit investigation was inadequate on both of the two points

upon which the Court ruled in Defendant's favor.  First, as Defendant points out, Plaintiff

proved unable to identify, in the course of a lengthy and fairly contentious discovery

process, any evidence that Defendant's "Clamp I" was sold or offered for sale after

September 7, 2004.  Yet, unless Defendant had provided at least some of this discovery

prior to the litigation, it is not clear how a pre-suit investigation, no matter how thorough,

could have determined whether such evidence might be found, particularly where all such

relevant evidence presumably would have been in the custody or control of Defendant or

its customers.  Moreover, Plaintiff had at least some reason to suspect, prior to bringing

this suit, that such evidence might be uncovered, where one of the inventors, Joseph

Pavlik, met with one of Defendant's major customers, General Motors, in early October

of 2004 — shortly after the pivotal date of September 7, 2004 — and was told that

Defendant had recently provided GM with the "Clamp I" product for testing.  While the

evidence ultimately showed that this was only a prototype, and while Plaintiff was unable

to produce evidence that "Clamp I" was actually sold or offered for sale after September

7, 2004, the Court cannot say that Plaintiff acted in bad faith by failing to anticipate this

4

outcome in its pre-suit investigation.[2]

Next, as to Plaintiff's claims that Defendant's "Clamp II" infringed the two patents-in-suit, it bears emphasis that the Court's disposition of these "Clamp II" claims turned almost entirely upon a purely legal question of claim construction — namely, whether the term "mechanism" as used in claim 1 of the '254 patent was properly viewed as a means-plus-function limitation, such that this term had to be construed as encompassing only the corresponding structure described in the patent specification for performing the function of this "mechanism." Once this Court answered this question in the affirmative, the remainder of the Court's inquiry was quite straightforward, because it was fairly evident (and Plaintiff's own witnesses conceded) that Defendant's "Clamp II" lacked the rotating central post described in the '254 patent specification.

Viewed against this backdrop, Defendant's claim of an inadequate pre-suit investigation rings hollow. While Defendant faults Plaintiff and its counsel for failing to undertake an elaborate "pre-litigation infringement analysis" or preparing a meaningful "claim chart[]," (Defendant's Motion, Br. in Support at 14), the Federal Circuit has explained that "a claim chart is not a requirement of a pre-filing infringement analysis, as the owner, inventor, and/or drafter of a patent ought to have a clear idea of what the patent covers without the formality of a claim chart." *Q-Pharma, Inc. v. Andrew Jergens*

---

[2]Notably, had Plaintiff been able to produce evidence of such a sale or offer for sale, there does not appear to be much dispute that "Clamp I" would have been found to have infringed the patents-in-suit. Defendant practically admitted as much in the parties' discussions in late 2004, as it first sought to secure a license from Plaintiff and then indicated that it would attempt to design around Plaintiff's patents — a process that resulted in the "Clamp II" product.

*Co.,* 360 F.3d 1295, 1301 (Fed. Cir. 2004). This reasoning is particularly applicable here,

where the resolution of the parties' dispute as to the proper construction of the '254 patent

did not turn upon any nuances of technical terms and how they might be construed by a

person of ordinary skill in the art in question, but rather upon the purely legal question

whether the term "mechanism" as used in claim 1 of the '254 patent triggered means-

plus-function treatment. It is not clear what pre-suit analysis could be expected on this

point, short of the case law discussion provided by the parties in their briefing on their

dispositive motions.[3]

To be sure, Plaintiff's argument on this point did not carry the day. Yet, "[c]laim

interpretation is not always an exact science, and it is not unusual for parties to offer

competing definitions of even the simplest claim language." *Q-Pharma,* 360 F.3d at

1301. More importantly, the Court's present task is not "to determine whether

[Plaintiff's] pre-filing interpretation of the asserted claims was correct, but only whether

it was frivolous." 360 F.3d at 1301. In this case, Plaintiff can point to at least three

considerations that supported its position: (i) a presumption that a limitation that lacks

the terms "means" is not subject to means-plus-function treatment, *see Massachusetts*

_____

[3]It also is worth noting that before this suit was brought, Plaintiff's counsel invited
Defendant to explain why its products were not infringing, (*see* Plaintiff's Response, Ex. G-1),
but Defendant's counsel declined this invitation, (*see* Plaintiff's Response, Ex. G-4). While
Defendant was under no legal obligation to state the basis for its position, this surely was a lost
pre-suit opportunity to educate Plaintiff on the arguments that would ultimately prevail in this
litigation. Moreover, this missed opportunity substantially blunts the force of defense counsel's
***later*** missives to Plaintiff's counsel — sent in early 2007, after the suit was filed and when the
parties were well into the discovery period — in which it was suggested that Plaintiff's claims
lacked merit and should be dismissed.

6

*Institute of Technology v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006), (ii) at least some supporting case law, *see, e.g., Greenberg v. Ethicon Endo-Surgery, Inc.,* 91 F.3d 1580 (Fed. Cir. 1996), and (iii) the doctrine of claim differentiation, *see Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998).  With this sort of arguable support for Plaintiff's position, the Court cannot conclude that Defendant has established by clear and convincing evidence that Plaintiff commenced this litigation in bad faith.

**C.    Defendant Has Not Shown by Clear and Convincing Evidence That Plaintiff's Claims in This Case Were Objectively Baseless.**

Even if this Court had concluded that Plaintiff brought this suit in bad faith, Defendant also would have to establish by clear and convincing evidence that this litigation was "objectively baseless."  *See Serio-US Industries,* 459 F.3d at 1322.  The Court finds that Defendant has not met this burden.

Turning first to the Court's determination that the term "mechanism" in claim 1 of the '254 patent triggered means-plus-function treatment, the Court already has explained that there was at least some support in the case law for Plaintiff's contrary position. Indeed, in the 49-page opinion in which it awarded summary judgment in Defendant's favor, the Court devoted over twenty pages to a discussion of this subject and the case law identified by the parties.  Most significantly, the Court was required to carefully examine and address the Federal Circuit's rulings in *MIT* and *Greenberg,* which reached different results under somewhat similar facts.  More generally, the Court notes that it

7

held a lengthy hearing on the parties' dispositive motions — a significant portion of which was devoted to the issue of claim construction —and then issued a lengthy opinion, and that the Federal Circuit deemed it appropriate to issue a published opinion affirming this Court's rulings.  *See Welker Bearing Co. v. PHD, Inc.,* 550 F.3d 1090 (Fed. Cir. 2008).[4]  These are not indicia of frivolous or objectively baseless litigation.

Admittedly, Plaintiff and its counsel came somewhat closer to crossing this line into frivolous or vexatious litigation when counsel continued to assert at oral argument that Defendant had offered its "Clamp I" product for sale after the key date of September 7, 2004, even though discovery had failed to produce any evidence in support of this assertion.  Even then, however, the most that can be said is that Plaintiff should have abandoned this claim at or near the close of discovery.  This still would have left the parties and the Court to address the separate, legally distinct question whether Defendant's "Clamp II" product infringed the patents-in-suit.  Moreover, while there was more than enough blame to go around, the Court cannot help but note that the conduct of the parties and their counsel in the course of discovery was not especially conducive to the speedy and efficient resolution of the factual questions concerning Defendant's efforts to market or sell its "Clamp I" product.  Accordingly, the Court finds that this consideration is not sufficient to establish by clear and convincing evidence that this

_____

[4]Along similar lines, Plaintiff notes that the complexity of the issues presented in this case is illustrated by the records of Defendant's own counsel, which disclose (i) over 550 hours of attorney time spent on researching and drafting Defendant's claim construction and summary judgment motions and accompanying briefs, and (ii) a total of over 2,300 hours of attorney time billed to Defendant in this case, for a total of $635,783 in requested attorney fees.

litigation was objectively baseless, such that an award of attorney fees is warranted under 35 U.S.C. § 285.

### III.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's motion for declaration of exceptional case and for its costs, attorney's fees and other expenses (docket #129) is DENIED, except to the extent that it seeks an award of costs under Fed. R. Civ. P. 54(d)(1) and Local Rule 54.1.  As to this latter request, the Clerk of the Court shall tax costs in accordance with Rule 54(d)(1), Local Rule 54.1, and this Court's usual procedures.

<u>s/Gerald E. Rosen</u>
Chief  Judge, United States District Court

Dated:  March 24, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2009, by electronic and/or ordinary mail.

<u>s/LaShawn R. Saulsberry</u>
Case Manager

9